# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-SA-01105-SCT

*CITY OF JACKSON, MISSISSIPPI AND JACKSON
WATER PARTNERSHIP*

*v.*

*UNITED WATER SERVICES, INC. AND UNITED
WATER SERVICES OF MISSISSIPPI, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/09/2009 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PIETER JOHN TEEUWISSEN |
| | JAMES A. PEDEN, JR. |
| | LARA E. GILL |
| | DALE DANKS, JR. |
| ATTORNEYS FOR APPELLEES: | ROBERT L. GIBBS |
| | KATIE LOFTON WALLACE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/18/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the Jackson City Council's decision to award a contract to Jackson

Water Partnership ("JWP"), United Water Services and its affiliate, United Water Services

of Mississippi, LLC (collectively "UWS"), appealed the City Council's decision, pursuant

to Mississippi Code Section 11-51-75 (Rev. 2002), in the Circuit Court of the First Judicial

District of Hinds County, Mississippi.  JWP filed a motion to intervene, which the circuit

court denied. JWP and the City of Jackson ("City") timely perfected this appeal of the order denying JWP's motion to intervene. We affirm.

**FACTS**

¶2.     In March 2008, the City issued a Request for Proposals ("RFP") for the Operation, Maintenance and Management of the Wastewater Facilities. Various vendors, including UWS and JWP, submitted proposals on or about May 20, 2008. An "Evaluation of Proposals for the Operation, Maintenance and Management of Wastewater Facilities" prepared by the City's Department of Public Works revealed a "pricing comparison" of the three submitted bids, as follows: Southwest Water Company – $3,019,170.31; UWS – $2,615,996.05; JWP – $4,689,018.13.[1] Following multiple special meetings reflected in the bill of exceptions, the Jackson City Council, by a four-to-one vote, awarded the contract to JWP on November 10, 2008.

¶3.     Aggrieved by this decision, UWS filed a notice of appeal with the circuit court pursuant to Section 11-51-75. UWS claimed that the City, in awarding the wastewater contract, had engaged in an unlawfully executed RFP process. JWP moved to intervene in the action, to which the City filed a joinder. Thereafter, the circuit court denied JWP's motion to intervene. JWP and the City now appeal.

---

[1]These figures were a "5 year Fixed Fee Total (assume 3% per Year)." Contrary to the dissent's assertion that, "[c]ommon sense dictates that the City merely has an interest in awarding the contract to the lowest and best bidder[,]" the City Council actually awarded the contract to the highest bidder, a bid more than $2 million greater than that of UWS. (Diss. Op. at ¶ 38).

2

## ISSUE

¶4.     This Court will consider:

Whether the circuit court erred in denying JWP's motion to intervene in the underlying appellate proceedings between UWS and the City.

## ANALYSIS

¶5.     The right to appeal the City's action was created by the Legislature. UWS filed the appeal pursuant to Section 11-51-75, which provides that "[a]ny person *aggrieved by* a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal . . . ." Miss. Code Ann. § 11-51-75 (Rev. 2002) (emphasis added). JWP clearly was not "aggrieved," because it was awarded a contract paying it $2 million more than what UWS had bid to perform the same services. The rationale behind permitting only the "aggrieved" to appeal is logical. It is not the act or conduct of a prevailing bidder which is subject to examination at the appellate level. Rather, the circuit court sitting as an appellate court was charged with determining whether the "decision of the board of supervisors, or municipal authorities" was arbitrary, capricious, or contrary to applicable law. *See Falco Lime, Inc. v. Mayor & Aldermen of the City of Vicksburg*, 836 So. 2d 711, 721 (Miss. 2002); *Cooper v. City of Picayune*, 511 So. 2d 922, 923 (Miss. 1987); Miss. Code Ann. § 11-51-75 (Rev. 2002). Although the prevailing bidder may be interested, it is not a necessary or indispensable party, nor a proper party under the statute granting the right of appeal solely to the "aggrieved." Miss. Code Ann. § 11-51-75 (Rev. 2002). UWS, an "aggrieved" party, sought appellate relief. JWP moved to intervene in the appeal, despite the absence of a right to appeal or intervene under Section 11-51-75.

3

¶6. JWP claims its right to intervene arises from Mississippi Rule of Civil Procedure 24. But this Court in **Cooper** clearly pointed out that "the Mississippi Rules of Civil Procedure . . . apply to trial proceedings only, except where therein expressly provided to the contrary." **Cooper**, 511 So. 2d at 923. Moreover, post-**Cooper**, the Mississippi Rules of Appellate Procedure were adopted and now control appeals. *See* "Order Adopting the Mississippi Rules of Appellate Procedure" ("the Mississippi Rules of Appellate Procedure will promote the prompt, fair, and efficient administration of justice *on appeal* . . . . [T]he [Rules] . . . are[] adopted as rules governing all proceedings in the Mississippi Supreme Court and the Court of Appeals of the State of Mississippi, *and the trial courts of this State* to the extent provided . . . .") (emphasis added). The Mississippi Rules of Appellate Procedure clearly and unequivocally do not provide for intervention at the appellate level.[2]

¶7. Mississippi Rule of Appellate Procedure 1 provides that:

> [t]hese rules govern procedure in appeals to the Supreme Court of Mississippi and the Court of Appeals of the State of Mississippi, and proceedings on

---

[2]This is in contrast to the Federal Rules of Appellate Procedure. *See* F.R.A.P. 15(d) (intervention permitted under Title IV – "Review or Enforcement of an Order of an Administrative Agency, Board, Commissioner, or Officer"). This important distinction between the Federal Rules of Appellate Procedure and the Mississippi Rules of Appellate Procedure renders **State of Texas v. U.S. Department of Energy**, 754 F. 2d 550 (5th Cir. 1985), cited by the dissent, distinguishable. *See id*. at 551 ("Rule 15(d) of the Federal Rules of Appellate Procedure governs interventions in administrative appeals such as this one."). Again, the Mississippi Rules of Appellate Procedure do not provide for intervention at the appellate level. The remaining federal cases cited by the dissent are plainly distinguishable as they each address a federal district court sitting as a trial court, not an appellate court. *See* **Ingebretsen v. Jackon Pub. Sch. Dist.**, 864 F. Supp. 1473 (S.D. Miss. 1994); **Bush v. Viterna**, 740 F. 2d 350 (5th Cir. 1984). While each case provides an excellent discussion of intervention under Federal Rule of Civil Procedure 24, ultimately denying intervention in both cases, that is not the scenario before this Court. *See* **Ingebretsen**, 864 F. Supp. at 1485; **Bush**, 740 F. 2d at 358-59.

4

petitions for writs or other relief which the Supreme Court or the Court of Appeals or a justice of the Supreme Court or judge of the Court of Appeals is empowered to grant. When these rules provide for the making of a motion in the trial court, the procedure for making such motion shall be in accordance with the practice of the trial court.

M.R.A.P. 1. The Comment to Rule 1 adds that the enumerated:

[r]ules which provide for the making of a motion in the trial court include Rules 4(g), extension of time to appeal; 6, determination of in forma pauperis status; 8(b), stay on appeal to be first sought in trial court; and 10(e)[,] correction of record on appeal. Trial court practice is governed by the Mississippi Rules of Civil Procedure, Mississippi Rules of Evidence, applicable uniform rules, and local rules where adopted pursuant to M.R.C.P. 83. The term "trial court" in these rules includes a circuit or chancery court sitting as an appellate court.

M.R.A.P. 1 cmt. Based upon this Comment, the dissent maintains that "the Rules of Appellate Procedure . . . require the application of the Mississippi Rules of Civil Procedure to a circuit court sitting as an appellate court." (Diss. Op. at ¶ 31). This Court agrees that the Rules as enumerated in the Comment *can be* applicable in an appealed case.[3] But common sense dictates that the applicability of certain Mississippi Rules of Civil Procedure, Mississippi Rules of Evidence, uniform rules, and local rules adopted pursuant to Mississippi Rule of Civil Procedure 83, will depend upon the nature of the appeal.[4] In a trial de novo (for example, a direct appeal from justice court or municipal court), the Mississippi Rules of Civil Procedure (including Rule 24 on intervention) and the Mississippi Rules of Evidence would

_____

[3]For instance, Mississippi Rule of Appellate Procedure 31(c) requires the filing of "[a]n original and three (3) copies of all briefs . . . ." M.R.A.P. 31(c). But in the context of a circuit court sitting as an appellate court, Uniform Circuit and County Court Rule 5.06 logically requires "only an original and one copy of each brief." URCCC 5.06.

[4]Uniform Circuit and County Court Rule 5.01 states, "[e]xcept for cases appealed directly from justice court or municipal court, all cases appealed to circuit court shall be on the record and not a trial de novo." URCCC 5.01.

apply. *See* URCCC 5.01, 5.07 ("[a]ll proceedings on an appeal de novo will be governed by the Mississippi Rules of Civil Procedure, where applicable, the Mississippi Rules of Evidence, and these Rules"). But the dissent's reliance on language from *Cooper* contained in *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996), does not support intervention on appeal in the present case. (Diss. Op. at ¶ 19). *Cummings* involved a primary election contest, which also is a trial de novo. *See* Miss. Code Ann. § 23-15-931 (Rev. 2007) ("[t]he special tribunal . . . shall fully hear the contest or complaint de novo . . . .").

¶8.     Likewise, the dissent's proposition that "[t]his Court *repeatedly has allowed* a circuit court to proceed de novo in an action appealed under Section 11-51-75 *where a board failed to conduct a hearing on the matter in issue*[,]" is not only delusive, but also altogether inapplicable in the present case. (Diss. Op. at ¶ 21) (emphasis added). It is delusive because "where no hearing is held, the action does not really proceed under Section 11-51-75 at all[,]" and because the proposition from *Cook v. Board of Supervisors of Lowndes County*, 571 So. 2d 932, 934 (Miss. 1990), cited by the dissent,[5] was later questioned in *Falco Lime* insofar as *Cook* failed to provide citation to similar cases, "[n]or does our research readily yield a list of them." *Falco Lime*, 836 So. 2d at 717-18 n.4.

¶9.     A de novo appeal under Section 11-51-75 is inapplicable here because sufficient "hearing" proceedings were held. The dissent's argument to the contrary is a red herring, distracting focus from the only issue presented on appeal, i.e., intervention. The appellate

---

[5]*See* **Cook**, 836 So. 2d at 717-18 (stating that it is "*one of those cases* where a party with standing challenges board action on grounds it is ultra vires and where that party is entitled to proceed de novo . . . .") (emphasis added).

6

briefs filed herein in no way assert a lack of "hearing" or claim that the trial court erred in failing to conduct a de novo trial. JWP's brief proclaims this certainty, unequivocally stating that following the submission of competing proposals:

> there ensued lengthy and complex administrative proceedings, in which the City negotiated with both [JWP] and [UWS]. The matter was considered by the Jackson City Council on several different occasions. At different times during the course of the proceedings, the Director of Public Works, acting for the Mayor, made different recommendations as to which of the competing entities . . . should be awarded the contract. The details of these involved proceedings are beyond the scope of the present appeal, which involves the limited issue of *intervention*. Suffice it to say that at a special meeting held on November 10, 2008, the Jackson City Council, by a vote of 4-1, accepted the final recommendation of the Public Works Director and of the Mayor to award the contract to [JWP].

(Emphasis added.) UWS argues that its circuit court appeal "alleges . . . that the City acted arbitrarily, capriciously, and contrary to law throughout the procurement process and in its ultimate decision to deny the award of contract to [UWS]."

¶10. Moreover, this Court has stated that the hearing requirement is "not necessarily one according to the form of a trial in a court of law." *Cook*, 571 So. 2d at 934. This Court has declined:

> to limit the application of Section 11-51-75 to those instances where city or county governing boards call in witnesses or interested parties pro and con and listen to them express their opinions before reaching a decision. Such a limitation would drastically limit the application of Section 11-51-75 and would also be inconsistent with our already-cited holding that the statute applies to "any act" that aggrieves a party. City and county government does not require a straw vote of interested parties whenever an action is proposed, however pragmatically desirable such participation may be in some cases. Numerous statutes mandate a formal hearing by board or council, but Falco has adduced none of these as controlling the present case. On the contrary, we have stated that a county board need not "recite all the evidence that appeared before them, or . . . set out in full, in their order, all the evidentiary matters pertinent to the controversy" in order for its order to be valid. *Hall v.*

7

*Franklin County*, 184 Miss. 77, 86, 185 So. 591, 594 (1939) (holding that absence of such evidence in board's order did not justify circuit court in going beyond bill of exceptions).

*Falco Lime*, 836 So. 2d at 718-19. *See also* **Malone v. Leake County Bd. of Supervisors**, 841 So. 2d 141, 144-45 (Miss. 2003) (sufficient evidence of "hearing" through Board minutes discussing subject contract, hearing regarding qualifications of bidders, motion to award contract, and unanimous vote). The voluminous bill of exceptions presented in this case includes, *inter alia*, the RFP issued by the City, the "Evaluation of Proposals" prepared by the City's Department of Public Works, multiple sets of minutes from special meetings of the City Council, an excerpt from the September 18, 2008, special meeting, and the November 11, 2008, "Order Authorizing Mayor to Execute Contract with [JWP] for the Management of [the City's] Wastewater Treatment Facilities." Accordingly, unlike *Cook*, this is not an exceptional case bereft of hearing, "where a party with standing challenges board action on grounds it is ultra vires and where that party is entitled to proceed de novo." *Cook*, 571 So. 2d at 934.

¶11. Regarding appeals under Section 11-51-75:

the circuit court sits only as an appellate court, and may consider no evidence presented outside the bill of exceptions. . . . This has been in place for over 150 years: "An appeal by bill of exceptions would necessarily confine the revising Court to the matters of law arising upon the exceptions." *Yalabusha County v. Carbry*, 11 Miss. 529, 548 (1844), *overruled on other grounds by* *Dismukes v. Stokes*, 41 Miss. 430, 435 (1867) . . . .

*Falco Lime*, 836 So. 2d at 716. The circuit court sitting as an appellate court applies the same standard of review "to the Board's legislative act" as to the "review of administrative agency decisions." *Id*. at 721. That is, the Board's action will be reversed only "if it is

8

arbitrary and capricious, or is not supported by substantial evidence." *Malone*, 841 So. 2d at 143. In this context, little beyond Uniform Circuit and County Court Rules 5.02 through 5.10 applies. *See* URCCC 5.02 to 5.10. As the present case involves this type of appeal, intervention was not an option available to JWP under the Rules.[6]

¶12. But this is not to say that the participation of additional parties should be barred. As *Cooper* aptly recognized, "[a]ny court of this state sitting as an appellate court has the inherent authority to allow additional parties to participate in the appeal upon timely application or upon the court's invitation." *Cooper*, 511 So. 2d at 923. Mississippi Rule of Appellate Procedure 29 provides an avenue for persons other than the parties to participate in the appellate process via the filing of an amicus curiae brief. *See* M.R.A.P. 29; *Cooper*, 511 So. 2d at 924 (endorsing participation in the appellate process through filing an amicus curiae brief).

¶13. JWP certainly had the right to seek participation at the appellate level by seeking leave to file an amicus curiae brief, however, intervention was not an available option. As no constitutional provision, statute, or court rule permits intervention, the adoption of the Mississippi Rules of Appellate Procedure effectively supplanted that portion of *Cooper*'s holding which provides, without citation, that "the [c]ircuit [c]ourt, when sitting as a court

---

[6]Extending the dissent's argument on the comprehensive application of the Mississippi Rules of Civil Procedure to circuit courts sitting as appellate courts, could either party here invoke Rule 38 of the Mississippi Rules of Civil Procedure by demanding that a jury consider its appeal, or Rules 26-37 seeking depositions and discovery on appeal? *See* M.R.C.P. 26 to 38. *See also* **Falco Lime**, 836 So. 2d at 717 ("[b]ecause Falco was required to proceed under Section 11-51-75, the circuit court was required to function in its appellate role and no discovery or testimony outside the bill of exceptions should have been allowed on the Board's decision to close VKS.")

of appeals, has the authority to allow third parties to intervene in the appeal." ***Cooper***, 511 So. 2d at 923. If the year was 1910, rather than 2010, this Court might agree with the dissent that ***Gates*** controls. Likewise, if it was 1987, this Court might agree with former Justice Robertson that ***Cooper*** was controlled by ***Gates***. *See id*. But, at present, the Mississippi Rules of Appellate Procedure control exclusively.

¶14. The circuit court properly denied JWP's Motion to Intervene, but that denial should have been premised upon the absence of any authority for a circuit court sitting as an appellate court to grant JWP's Motion to Intervene. "It is well established in our jurisprudence that the right result reached for the wrong reason will not be disturbed on appeal." ***Green v. Cleary Water, Sewer & Fire Dist.***, 17 So. 3d 559, 572 (Miss. 2009) (citations omitted).

## CONCLUSION

¶15. As no authority existed for JWP to intervene, the circuit court's denial of JWP's motion to intervene was proper, albeit for the wrong reason. The order of the Circuit Court of the First Judicial District of Hinds County is affirmed.

¶16. **AFFIRMED**.

**WALLER, C.J., CARLSON, P.J., DICKINSON, CHANDLER AND PIERCE, JJ., CONCUR. LAMAR, J., CONCURS IN RESULT ONLY. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.**

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶17. Jackson Water Partnership (JWP) had a right to intervene in the circuit court action contesting the award of a contract to it by the City of Jackson. Because I would find that the circuit court erred in denying JWP's motion to intervene, I respectfully dissent.

10

¶18. The majority's statement that "the adoption of the Mississippi Rules of Appellate Procedure effectively supplanted" the applicable portion of *Cooper v. City of Picayune*, 511 So. 2d 922, 923 (Miss. 1987), is erroneous. (Maj. Op. at ¶ 13). Specifically, the majority states:

> JWP certainly had the right to seek participation at the appellate level by seeking leave to file an amicus curiae brief, however, intervention was not an available option. As no constitutional provision, statute, or court rule permits intervention, the adoption of the Mississippi Rules of Appellate Procedure effectively supplanted that portion of *Cooper's* holding which provides, without citation, that "the [c]ircuit ]c]ourt, when sitting as a court of appeals, has the authority to allow third parties to intervene in the appeal." *Cooper*, 511 So. 2d at 923. If the year was 1910, rather than 2010, this Court might agree with the dissent that *Gates* controls. Likewise if it was 1987, this Court might agree with former Justice Robertson that *Cooper* was controlled by *Gates*. *See id*. But, at present, the Mississippi Rules of Appellate Procedure control exclusively.

(Maj. Op. at ¶ 13).

¶19. The Mississippi Rules of Appellate Procedure were adopted effective January 1, 1995. On September 12, 1996, this Court decided *Cummings v. Benderman*, 681 So. 2d 97 (Miss. 1996), and said:

> Any court of this State sitting as an appellate court has the inherent authority to allow additional parties to participate in the appeal upon timely application or upon the court's invitation. *Cooper v. City of Picayune*, 511 So. 2d 922, 923 (Miss. 1987). Indeed, there may be occasions when the court should decline to act until all necessary parties have been joined. *See Gates v. Union Naval Stores Co.*, 92 Miss. 227, 229, 45 So. 979 (1908).

*Cummings*, 681 So. 2d at 100. This Court further said that the "Circuit Court, when sitting as a court of appeals, has the authority to allow third parties to intervene in the appeal." *Id*. at 101. Applying Rule 24 of the Mississippi Rules of Civil Procedure, this Court found that:

11

It is the opinion of this Court that the State Committee's interests were not adequately represented by Cummings in the election contest, and consequently the State Committee should have been allowed to intervene permissively, if not by right.

*Id*. at 102.

¶20.   This Court has clearly applied the Mississippi Rules of Civil Procedure to appellate intervention actions since the effective date of the Mississippi Rules of Appellate Procedure. As a result, the Mississippi Rules of Appellate Procedure do not "exclusively control," as the majority states. (Maj. Op. at ¶ 13).

¶21.   The majority attempts to distinguish ***Cummings*** on the basis that it involved a trial de novo and by asserting that the matter before this Court does not. However, the majority's attempted distinction is erroneous. This Court repeatedly has allowed a circuit court to proceed de novo in an action appealed under Section 11-51-75 where a board failed to conduct a hearing on the matter in issue. *See **Cook v. Bd. of Supervisors of Lowndes County***, 571 So. 2d 932, 934 (Miss. 1990) ("This becomes one of those cases where a party with standing challenges board action on grounds it is ultra vires and where that party is entitled to proceed de novo."). *See also **Malone v. Leake County Bd. of Supervisors***, 841 So. 2d 141, 144 (Miss. 2003) ("It is true that where a county fails to hold any kind of hearing, a party with standing is entitled to de novo review."); ***Falco Lime, Inc. v. Mayor & Aldermen of City of Vicksburg***, 836 So. 2d 711, 717-18 (Miss. 2002) ("[E]rgo, where no hearing has been held, the circuit court does not sit in its appellate capacity, and that court may thus proceed de novo with respect to the evidence it may consider."); and ***Newell v. Jones County***, 731 So. 2d 580, 582 (Miss. 1999).

12

¶22. The majority refers to the citation of this authority as "delusive" and states that it is "inapplicable in the present case." (Maj. Op. at ¶ 8). However, the majority's attempted perversion of this authority is erroneous and does not overcome the majority's inability to cite to any portion of the record in the instant case to establish that a hearing was held. Further, the majority's reasoning is contradictory. First, the majority states that the proposition established by this authority is "delusive because 'where no hearing is held, the action does not really proceed under Section 11-51-75 at all [,]' and because the proposition from *Cook v. Board of Supervisors of Lowndes County*, 571 So. 2d 932, 934 (Miss. 1990), cited by the dissent [footnote omitted] was later questioned in *Falco Lime* insofar as *Cook* failed to provide citation to similar cases, ' [n]or does our research readily yield a list of them.'" (Maj. Op. at ¶ 8) (citing *Falco*, 836 So. 2d at 717-18 n.4). The majority is acknowledging that an action does not really proceed under Section 11-51-75 when no hearing is held, thus proceeding de novo. But then the majority appears to be claiming that there is no authority for proceeding de novo because *Cook* cited no cases for such a proposition. Yet, *Falco*, on which the majority relies, cites *Cook* extensively. *Falco*, 836 So. 2d at 717-19. Further, this Court did not question *Cook* in *Falco*, but merely said:

> The Court labeled the action in *Cook* "one of those cases where a party with standing challenges board action on grounds it is ultra vires and where that party is entitled to proceed de novo," though unfortunately it did not provide citations to "those cases." *Id*. [n. 4].
>
> > [n. 4]. Nor does our research readily yield a list of them. To the extent that the facts surrounding an action are not in dispute, the claim that it was ultra vires is reviewed de novo as a matter of law, but that is not the same as dispensing with the bill of exceptions.

13

*Id*. at 717-18 n.4. Then the majority states that "[a] de novo appeal under Section 11-51-75 is inapplicable here because sufficient 'hearing' proceedings were held." (Maj. Op. at ¶ 9). However, again, the majority is unable to cite any portion of the record in this matter to establish that a hearing including JWP and UWS was held, because there was no hearing. The majority's finding that "sufficient 'hearing' proceedings were held" based on the "voluminous bill of exceptions," documents prepared by the City, or meetings of the City Council is wholly unsupported by the facts. (Maj. Op. at ¶¶ 9, 10).

¶23. The majority's contention that the position that no hearing was held is a "red herring, distracting focus from the only issue presented on appeal, i.e., intervention" is absurd. (Maj. Op. at ¶ 9). The majority is correct that the appellate briefs do not assert a "lack of 'hearing' or claim that the trial court erred in failing to conduct a de novo trial." (Maj. Op. at ¶ 9). JWP would first have to be allowed to intervene before the assertion of any claim regarding a lack of a hearing on the merits. Further, the issue regarding a de novo standard was raised solely by the majority in its attempted distinction of ***Cummings***. (Maj. Op. at ¶ 7). This dissenting opinion is being written because I would find that the circuit court erred in denying JWP's motion to intervene. (Diss. Op. at ¶¶ 17, 41).

¶24. The majority is correct that this Court appears to have found that a proper hearing had been held in ***Falco***. ***Falco***, 836 So. 2d 718-19. However, the majority fails to acknowledge the context of the decision or the facts of that case. ***Falco*** was a consolidated appeal of two cases. *Id*. at 713. Specifically, this Court said:

> In the first case, Mayor Robert M. Walker, and aldermen Samuel D. Habeeb and Gertrude A. Young of the City of Vicksburg (hereinafter "the Board") appeal the July 7, 1999, judgment of the Warren County Circuit Court, which

14

permanently enjoined the Board from closing the Vicksburg Municipal Airport (hereinafter "VKS") . . . . The Board also appeals the circuit court's entry of partial summary judgment against it on December 14, 1998, in which the court found that the Board was required to create a "separate corporate authority" . . . before it could "act under the Airport Authorities Law" to jointly operate the Vicksburg Tallulah Regional Airport ("VTR") with Warren County and a Louisiana city and parish.

A host of Vicksburg businesses, as shown in the style of this case, and for convenience and clarity referred to as "Flasco" after Falco Lime, Inc., the party first named therein, filed a cross-appeal. . . .

The second case consolidated in this appeal is Falco's own appeal from another judgment of the Warren County Circuit Court, dated June 30, 1999, which dismissed Falco's appeal of the Board's decision to create a municipal authority and to appoint two commissioners to that authority

*Falco*, 836 So. 2d at 713-14. This Court further noted that:

The "Falco" parties, all of whom used VKS or otherwise benefitted from it, filed a flurry of actions in chancery, circuit and county courts on March 6, 1998, seeking to keep VKS open and to recover from the Board in their individual capacities all the tax money that the Board had expended on VTR, as well as Falco's reasonable attorney fees and expenses. The circuit court considered these claims under Falco's bill of exceptions (seeking to permanently enjoin the closure) as well as under its amended complaint (seeking to enjoin the closure and to impose personal liability). The circuit court granted a temporary restraining order on March 23, which was converted to a preliminary injunction on April 20. In December 1998, it granted partial summary judgment against the Board. . . .

*Id*. at 714.

¶25. All of the parties on appeal in *Falco* participated in the action in the trial court. There was no issue of a party not being permitted to intervene. Further, the issue raised on appeal by *the Board* and from which the majority here quotes was actually: "Whether Falco's exclusive remedy was by notice of appeal and bill of exceptions as per § 11-51-75, *not by a suit for a temporary restraining order and preliminary injunction*." *Falco*, 836 So. 2d at 715 (emphasis added). Only the portion quoted by the majority in paragraph 10 actually comes

15

from the trial de novo discussion in *Falco*. Further, that portion quoted by the majority in paragraph 10 is actually preceded by a detailed discussion of *the Board's* actions in *Falco*, to which this Court then said: "Does *this* amount to a "hearing" for the purpose of determining whether *Cook* applies? To rule otherwise would be to limit the application of § 11-51-75 . . . ." *Falco*, 836 So. 2d at 718 (emphasis added). Clearly this Court's consideration was limited to the applicable facts of *Falco*, i.e., the actions of the Board, which then raised the very issue being considered on appeal.

¶26. The majority then cites *Malone v. Leake County Bd. of Supervisors,* 841 So. 2d 141, 144 (Miss. 2003) for the proposition that "sufficient evidence of 'hearing' through Board minutes discussing subject contract, hearing regarding qualifications of bidders, motion to award contract, and unanimous vote." (Maj. Op. ¶ 10). In *Malone*, this Court explicitly found that the "Board *held a hearing* on October 16, 2000, regarding the qualifications of Malone and Carthage Ambulance Service." *See Malone*, 841 So. 2d at 144 (emphasis added). There also was no intervention issue in *Malone*.

¶27. In the instant case, the City merely issued a Request for Proposals, which were evaluated by the City of Jackson Department of Public Works. There was no hearing. Therefore, a de novo review is proper. *See Cook v. Bd. of Supervisors of Lowndes County*, 571 So. 2d 932, 934 (Miss. 1990); *Malone v. Leake County Bd. of Supervisors*, 841 So. 2d 141, 144 (Miss. 2003); *Falco Lime, Inc. v. Mayor & Aldermen of City of Vicksburg*, 836 So. 2d 711, 717-18 (Miss. 2002); and *Newell v. Jones County*, 731 So. 2d 580, 582 (Miss. 1999).

16

¶28. Notwithstanding the applicability of a de novo standard, this Court's decision in

*Cummings* is consistent with the Mississippi Rules of Appellate Procedure.

¶29. The "Order Adopting the Mississippi Rules of Appellate Procedure" does state:

> (1) that the Mississippi Rules of Appellate Procedure in the form attached hereto be, and hereby are, adopted as rules governing all proceedings in the Mississippi Supreme Court and the Court of Appeals of the State of Mississippi, and the trial courts of this State *to the extent provided in the Rules.*
> . . .

Miss. R. App. P. Order (emphasis added).

¶30. However, Rule 1 specifically states:

> These rules govern procedure in appeals to the Supreme Court of Mississippi and the Court of Appeals of the State of Mississippi, and proceedings on petitions for writs or other relief which the Supreme Court or the Court of Appeals or a justice of the Supreme Court or judge of the Court of Appeals is empowered to grant. *When these rules provide for the making of a motion in the trial court, the procedure for making such motion **shall be in accordance with the practice of the trial court.***

Miss. R. App. P. 1 (emphasis added). The comment to Rule 1 further clarifies:

> *Rules which provide for the making of a motion in the trial court include Rules 4(g), extension of time to appeal; 6, determination of in forma pauperis status; 8(b), stay on appeal to be first sought in trial court; and 10(e) correction of record on appeal.* ***Trial court practice is governed by the Mississippi Rules of Civil Procedure,*** *Mississippi Rules of Evidence, applicable uniform rules, and local rules where adopted pursuant to M.R.C.P. 83.* ***The term "trial court" in these rules includes a circuit or chancery court sitting as an appellate court.***

Miss. R. App. P. 1 cmt. (emphasis added).

¶31. The term "trial court" as used in the Rules of Appellate Procedure includes a circuit

court sitting as an appellate court. Clearly, the Rules of Appellate Procedure also require the

application of the Mississippi Rules of Civil Procedure to a circuit court sitting as an

17

appellate court. Therefore, the majority's attempt to exclude the application of the Mississippi Rules of Civil Procedure is erroneous.

¶32. Moreover, even if the Mississippi Rules of Civil Procedure did not apply and only the Rules of Appellate Procedure were controlling, the majority's finding still would be erroneous. Rule 29 addresses only leave to file an amicus brief and in no way limits relief sought from an appellate court through a motion to intervene filed pursuant to Mississippi Rule of Appellate Procedure 27. *See* Miss. R. App. P. 27. Further, this Court has the authority to "suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion" pursuant to Rule 2. *See* Miss. R. App. P. 2(c).

¶33. The holdings in ***Cummings, Cooper***, and ***Gates v. Union Naval Stores Co.***, 92 Miss. 227, 229, 45 So. 979 (1908), also are supported by other authority, which the majority attempts to distinguish by virtue of an intervention provision in the Federal Rules of Appellate Procedure. (Maj. Op. at n. 2). However, the majority's attempted distinction fails because, as set out previously herein, this Court has found that the intervention provision of the Mississippi Rules of Civil Procedure is clearly applicable in post-Mississippi Rules of Appellate Procedure matters.

¶34. The United States Court of Appeals for the Fifth Circuit has said that either intervention or amicus curiae status is an available option. In ***Bush v. Viterna***, 740 F. 2d 350, 359 (5th Cir. 1984), the Fifth Circuit Court found intervention by right was not appropriate because the intervenor's interests were adequately represented by an existing party. However, with regard to permissive intervention, the court said, in relevant part:

18

In acting on a request for permissive intervention, it is proper for the court to consider the fact that the Association has been granted amicus curiae status in this case. [Citation omitted]. Indeed, this seems to be the very type of case envisioned by Judge Wyzanski in *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.,* 51 F. Supp. 972, 973 (D. Mass. 1943), when he stated:

> It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

We believe that, in a case such as this, the position of amicus, which the Association already possesses, is more appropriate than an intervention with full-party status.

In sum, as to permissive intervention, we do not find any extraordinary circumstances in this case as would justify our determining that the district court clearly abused its discretion. We accordingly dismiss this portion of the appeal.

*Id*. at 359.

¶35.    In *State of Texas v. U.S. Dep't of Energy*, 754 F. 2d 550 (5th Cir. 1985), the Fifth Circuit found that appellate intervention was not appropriate "because the utilities have no claim or defense involving common questions of law or fact with those in the ongoing proceeding as required by the rule." *Id*. at 553. However, the court further found as follows:

The utilities may seek to present their views as amicus curiae, and leave to do so is here granted. As this court noted in *Bush v. Viterna*, 740 F. 2d 350, 359 (5th Cir. 1984), "when he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention."

*State of Texas v. U.S. Dep't of Energy*, 754 F. 2d at 553. *See also Ingebretsen v. Jackson Public Sch. Dist.*, 864 F. Supp. 1473, 1484-85 (S.D. Miss. 1994).

¶36.    Therefore, it is appropriate to consider whether JWP should be allowed to intervene by right or by permission.

¶37.    JWP's application was timely. JWP was awarded the contract at issue and clearly has "an interest relating to the property or transaction which is the subject of the appeal." *Cooper*, 511 So. 2d at 923. JWP is further "so situated that disposition of the appeal may as a practical matter impair or impede his ability to protect his interest." *Id*. The sole issue to be resolved is whether "the party's interest is adequately represented by the existing party." *Id*.

¶38.    JWP has an interest that is not adequately protected by the City. While the City of Jackson and JWP may have overlapping interests, they also clearly have separate interests. Common sense dictates that the City merely has an interest in awarding the contract to the lowest and best bidder and ensuring the fulfillment of the contract by whoever that bidder may be. JWP has proprietary and financial interests in being awarded the contract. Further, the majority fails to explain the appropriate course of action JWP would need to take if United Water Services should prevail in its underlying action. Presumably JWP would then need to file a separate lawsuit challenging the award of the contract to United Water Services. In any event, JWP would be placed at a substantial disadvantage in protecting its legitimate interests if not allowed to participate in these proceedings regarding its contract.

¶39.    This Court in *Madison HMA, Inc. v. St. Dominic-Jackson Mem'l Hosp.*, 35 So. 3d 1209, 1215 (Miss. 2010), clarified that a trial court has little, if any, discretion in such an

action, and then reversed a chancellor's denial of a motion to intervene by a second prospective buyer in an action by a first prospective buyer to enforce a purchase agreement. *Madison HMA*, 35 So. 3d at 1214. Yet here, the majority finds that an actual party to a contract should not be allowed to intervene. Those results are inconsistent. If the putative intervenor in *Madison HMA* was allowed to intervene in a case where it had no contract and no award of a bid, then surely the putative intervenor in this case should be allowed to intervene as a matter of right. Unlike the putative intervenor in *Madison HMA*, JWP has a demonstrable and genuine "interest related to the property or transaction." Based on the record in this matter, I would find that the requirements necessary to establish intervention of right have been met and that the circuit court decision to deny the motion to intervene must be reversed.

¶40.    However, even if JWP did not meet the requirements for intervention by right, it should not be excluded from the action involving a contract which it was awarded. Under the authority cited herein, it should be allowed permissive intervention or, at the very least, be granted amicus curiae status.

¶41.    Because I would find that the requirements necessary to establish intervention of right have been met, I would reverse the judgment of the circuit court. Therefore, I respectfully dissent.

**KITCHENS, J., JOINS THIS OPINION.**

21